IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :

     v.     :     **CRIMINAL NO. 24-219-6**

ALEXANDER ROMAN DELGADO     :

### <u>GOVERNMENT'S SENTENCING MEMORANDUM</u>

Defendant Alexander Roman Delgado, after years of committing to a criminal lifestyle, continued down that path when he sold a shotgun to a man that he believed was a narcotics and firearms trafficker. The defendant acted as a cog in the wheel of a prolific criminal enterprise and showed no hesitation to arm a man he knew to be a criminal, despite the defendant being ineligible to possess firearms himself.  This case clearly illustrates the defendant has learned nothing from his past convictions and remains a danger to society. Therefore, the government recommends a sentence of incarceration of 84 months, which is within the applicable guideline range and would adequately address all 18 U.S.C. § 3553(a) factors.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

---

[1]  Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

I.    **BACKGROUND**

On May 30, 2024, a federal grand jury sitting in the Eastern District of Pennsylvania returned a 54-count Indictment against the defendant and 11 others for their role in a drug and firearms trafficking organization (DTO) that was responsible for selling multiple kilograms of fentanyl and dozens of firearms. The Indictment charged the defendant with conspiracy, in violation of 18 U.S.C. § 371 (Count 2), possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1)(A) (Count 46), and trafficking in firearms and aiding and abetting in violation of 18 U.S.C. §§ 933(a)(1) and 2 (Count 54). A Notice of Forfeiture accompanied the Indictment.

On December 3, 2025, the defendant appeared before the Honorable Nitza I. Quinones

Alejandro and pled guilty to Counts Two, Forty-Six, and Fifty-Four, pursuant to a written guilty plea agreement. As a condition of the guilty plea, the Government agreed to recommend a sentence of imprisonment that is at the bottom of the applicable Sentencing Guidelines range as determined by the Court.

During his plea, the defendant admitted possessing and selling a firearm as part of the DTO, after previously being convicted of a felony offense. The defendant was aware that he was not permitted to possess firearms, yet he made the conscious decision to sell a shotgun to a man he believed was a felon. The defendant did this purely to enrich himself. Further, his actions helped perpetuate the goals of the DTO.

II.    **SENTENCING CALCULATION**

A.    **Statutory Maximum Sentence.**

The Court may impose the following statutory maximum and mandatory minimum sentences: for Count Two, charging conspiracy to deal firearms without a license, a maximum of five years' imprisonment; three years supervised release; a $250,000 fine; and a $100 special assessment; For Count Forty-Six, charging possession of a firearm by a felon, fifteen years' imprisonment; three years of supervised release; a $250,000 fine; and $100 special assessment; and for Count Fifty-Four, charging firearms trafficking, fifteen years' imprisonment; three years of supervised release; a $250,000 fine; and $100 special assessment. The total permissible statutory maximum sentence is a term of imprisonment of fifteen years, a term of supervised release of three years, a fine of $750,000, and a special assessment of $300.

**B.**    **Sentencing Guidelines Calculation.**

The Probation Office correctly calculated the defendant's advisory guideline range as follows: 84 to 105 months in prison.  These calculations establish that the defendant has a Total Offense Level of 23, and a Criminal History Category of V, resulting in the above range. PSR ¶ 158.

The defendant has the following criminal convictions: In the Philadelphia County Municipal Court, on October 28, 2010, the defendant was convicted of intentional possession of a controlled substance, and was sentenced to 12 months' probation. The defendant receives 0 criminal history points for this offense, as it falls outside the 15-year window for the sentence to be considered. PSR ¶100. On March 25, 2011, the defendant was convicted of intentional possession of a controlled substance. The defendant received no further penalty for this conviction. The defendant receives 0 criminal history points for this offense, as it falls outside the 15-year window for the sentence to be considered. PSR ¶102. In the Philadelphia County Court of Common Pleas: On August 2, 2012, the defendant was convicted of possession with the intent to distribute cocaine. The defendant received a sentence of 12 months' incarceration followed by two years of probation. On October 5, 2016, the defendant's probation was revoked, and he was resentenced to 6 to 23 months of incarceration followed by five years of probation. The defendant receives 3 criminal history points for this offense. PSR ¶103. On July 18, 2013, the defendant was sentenced after being convicted of possession with the intent to distribute Percocet, marijuana, Xanax, and MDMA. The defendant received a sentence of 24 months of incarceration followed by 3 years' probation. The defendant receives 3 criminal history points for this offense. PSR ¶104. On March 12, 2018, the defendant was sentenced after being

4

convicted of possession with the intent to distribute cocaine and heroin. The defendant received a sentence of 11.5 to 23 months of incarceration followed by 4 years' probation. The defendant receives 3 criminal history points for this offense. PSR ¶105. The defendant was on probation at the time of this arrest; therefore one point is added pursuant to USSG § 3A1.1(e). PSR ¶ 107. Thus, the defendant accumulated 10 criminal history points, resulting in Criminal History Category V.

The defendant receives a three-level reduction to the offense level because he timely accepted responsibility. PSR ¶ 85.

These calculations establish that defendant Roman Delgado has a Total Offense Level of 23, and a Criminal History Category of V, resulting in an advisory guideline range of 84 to 105 months' imprisonment. PSR ¶ 158.

### III.    ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**A.**     **<u>Consideration of the 3553(a) Factors Regarding Imprisonment</u>.**

    1.   <u>The Nature and Circumstances of The Offense</u>

From February 2023 to June 2024, Wilfredo Avila ran a drug distribution organization (DTO) that sold large quantities of fentanyl and dozens of illegal firearms in and around the Philadelphia area. Defendant Alexander Roman Delgado and Avila provided a man who was working as a confidential informant (CI) for law enforcement with an illegal firearm. As a result of the activities of the DTO, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and other agencies initiated an investigation of the drug and firearm trafficking. During the course of the investigation, the ATF utilized the CI, to purchase dozens of firearms. The sale of the illicit firearms in this organization followed a very specific pattern. Avila would contact associates of his to see if they had firearms for sale. If they answered in the affirmative, Avila

would negotiate a price for the firearms with his associate. The associate would then provide the firearm to Avila, who would then sell it to the CI. Avila and the associate would then split the money. The defendant traveled with Avila to secure a firearm to sell to the CI, while providing his surveillance and security services. Avila and the defendant believed that the CI was a narcotics trafficker who, upon receipt of the firearms, would sell them illegally to third parties.

On the date as indicated below, ATF investigators utilized a confidential source to make a controlled purchase for firearms from Avila and the defendant in the manner described above.

Leading up to April 30, 2024, Avila told the CI that he was going to sell him a shotgun from a garage located near the intersection of F St. and Ontario St. Further, Avila stated that the defendant was going to follow behind them to act as a lookout.

On April 30, 2025, CS-3 arrived on the 3300 block on N. American St. Avila entered CI's vehicle. The CI gave Avila government funds in exchange for a pistol from Avila. They then departed the area to procure the shotgun, with the defendant's gold Nissan following behind. The cars drove to the area of the garage and parked. The defendant then approached the porch of 702 E. Ontario St. and grabbed a large black bag and brought it to the CI's vehicle. At that point he opened the bag and showed the CI a shotgun and placed the bag in the backseat. The CI paid Avila $2600 in government funds for the firearms.

Agents recovered a 9mm Rohbaugh semi-automatic pistol bearing serial number R5267 loaded with five live rounds and a 12-gauge Mossberg 500 shotgun bearing serial number J521725.

The shotgun was manufactured outside of Pennsylvania, thus, due to its recovery in Philadelphia, it affected interstate commerce.

7

In 2018, the defendant was convicted in the Pennsylvania Court of Common Pleas of possession with the intent to distribute a controlled substance, resulting in a sentence of 11.5 to 23 months of incarceration followed by a 4-year term of probation. Therefore, at the time of his arrest, the defendant was aware that he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

2.   History and Characteristics of the Defendant

The defendant has a significant criminal history and has proven himself comfortable living outside the bounds of lawful society. As laid out above, the defendant has run afoul of the law since he was a juvenile, engaging in narcotics crimes consistently. In fact, as an adult, the defendant has been convicted for selling a wide variety of illegal drugs.

The defendant has spent a significant amount of his adult life incarcerated, though it should be noted that his sentences have been conspicuously lenient, and he was afforded the opportunity to enroll in diversion programs several times. The defendant wasted those opportunities and chose a life of crime instead of putting in the effort to rehabilitate himself.

More troubling, the defendant's actions show that he was willing to escalate his behavior and he became an even bigger threat to the safety of Philadelphia than he was when he was selling narcotics. The defendant put an illegal shotgun into the hands of a man he believed was a gun and drug dealer. He was aware that Avila had been providing the CI with illicit materials for months and joined in the endeavor to enrich himself. The recording of the transaction between the defendant and the CI shows the defendant cavalierly handing over an extremely dangerous weapon without any concern for the damage it could potentially cause.

The defendant has proven that he will take any opportunity to make money, even at the

expense of the health and safety of the city in which he resides.

### 3. Personal Background

The defendant did not have an easy upbringing, as his father was murdered when the defendant was just four years old and he was raised in high-crime projects in Arecibo, Puerto Rico. PSR ¶ 116, 118. However, the defendant experienced a loving household headed by his mother, with whom he still maintains a very strong bond. PSR ¶ 116. The defendant noted that he had a good childhood because of his mother and his needs were met. PSR ¶ 120.

The defendant has a three-year old son with whom he shares a close relationship. Prior to his arrest, the defendant played an important role in his son's life. While that is admirable on its face, one must be concerned about what effect the defendant's behavior in this case could have on his loved ones and those who spend the most time with him. Firearms trafficking is an inherently dangerous endeavor. By engaging in this behavior, the defendant not only puts himself at risk, but also those in his orbit. The defendant's relationships with his loved ones have never been able to convince him to change his ways and there is no reason to suggest that would change after this case.

### 4. Need for the Sentence Imposed to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment for the Offenses

The circumstances surrounding the defendant's conviction are very serious.  Gun violence continues to be a scourge in Philadelphia and much of that violence is committed with illegally purchased firearms. The defendant provided a man he believed was a prolific criminal with a weapon that could cause significant damage to anything or anyone caught in its path. The defendant's actions dictate that a sentence of 84 months' imprisonment is required in this case

9

"to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  This recommended sentence will ensure that the public is protected from the defendant at least during the time he is incarcerated.  It will also provide an opportunity for the defendant to rehabilitate himself.

5. <u>Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant</u>

The recommended sentence affords adequate general deterrence to others who would consider committing similar offenses. It will also serve to deter the defendant, as it sends a message that any further criminal acts will continue to result in more severe punishment. 18 U.S.C. § 3553(a)(2).

6. <u>Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner</u>

The defendant could clearly benefit from educational and vocational programs; however, it is not known whether he is interested in pursuing any such programs. This would aid the defendant in reintegrating into society. To the extent the defendant wishes to pursue those offerings, the recommended sentence will not inhibit those efforts while he is incarcerated or on release.

7. <u>Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who have been Found Guilty of Similar Conduct</u>

Sentencing consistency is extremely important in the overall administration of justice. Any sentence imposed on the defendant must reflect consideration of the sentences imposed upon similarly situated defendants who brought to the table the same types of sentencing considerations as those presented by the defendant, particularly those with a similar criminal history who are considering arming themselves with illegal firearms. Sentence disparities among

such individuals must be avoided. The Government believes that a sentence of 84 months followed by 3 years of supervision is appropriate.

**B.      Supervised Release.**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of 3 years is warranted. As explained above, the defendant was engaged in criminal activity with that has a terrible effect on the community. Close supervision following release from imprisonment is warranted to aid his reentry to society and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure

that the defendant continues to pursue education and vocational efforts that promote

rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7). Further, the

Sentencing Commission recognizes that "the more serious the defendant's criminal history, the

greater the need for supervised release." § 5D1.1 app. note 2. The Commission adds: "In a case

in which a defendant sentenced to imprisonment is an abuser of controlled substances or alcohol,

it is highly recommended that a term of supervised release also be imposed." § 5D1.1 app. note

3.

## IV.    CONCLUSION

The government's final recommendation regarding sentencing appears in the sealed

attachment.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s David Osborne*
David Osborne
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:


Luis Ortiz, Esq.


/s David Osborne
DAVID OSBORNE
Assistant United States Attorney



DATED:  June 19, 2026.